**Norman HARTNESS, et al., Plaintiffs,**

v.

**George BUSH, et al., Defendants.**

**Civ. A. No. 89–0044–LFO.**

United States District Court, District of Columbia.

July 17, 1992.

Jeffrey F. Liss, Benjamin S. Boyd, Robert M. Sadler, Piper & Marbury, Washington, D.C., (Arthur B. Spitzer, Elizabeth Symonds, American Civil Liberties Union Fund of the Nat. Capital Area, Washington, D.C., of counsel), for plaintiffs.

Patrick Sorek, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

### MEMORANDUM

OBERDORFER, District Judge.

This matter originated on behalf of a number of employees of the Executive Office of the President ("EOP") who were designated for random urine tests as part of a Plan to establish a drug-free federal workplace in that office. It is now before the Court on plaintiffs' motions for a permanent injunction and cross-motions for summary judgment. Plaintiffs contend the entire Plan is invalid for failure to comply with the Administrative Procedures Act ("APA") and, alternatively, that the Plan's application to two plaintiffs, Ms. Barbara Doran and Ms. Donna Ferrantello, should be enjoined.

Both of these plaintiffs are EOP employees with duty stations in the New Executive Office Building ("New EOB"). Neither Ms. Doran or Ms. Ferrantello has a White House pass, but both have passes to the Old Executive Office Building ("Old EOB"). Ms. Doran's supervisor worked in

the Old EOB until 1979, requiring Ms. Doran to go there on business in 1978. Now she goes to the old EOB no more than six times per year to use the Post Office there. Ms. Doran would be "happy" to surrender her pass.

The EOP originally designated Ms. Doran for testing solely because she holds a pass to the Old EOB, which the President occasionally visits for a press conference or meeting, and where the Vice President has a second office. Defendants have provided no indication that either the President or the Vice President ever is in the Old EOB without heavy, close security. Nor are other visitors to the Old EOB, including government employees and private citizens, required to submit to urine tests as a requisite to entering.

Defendants further contend that Ms. Doran should submit to testing because, although she has no access to either top secret or secret documents, her computer work gives her access to unclassified, but "truly sensitive," information relating to the federal budget and similar information unrelated to national security.

Although Ms. Ferrantello also works at the New EOB with a pass to the Old EOB, she is designated for testing solely because she has a secret clearance.

The controlling Court of Appeals decision on this issue was by a divided panel. *Hartness v. Bush*, 919 F.2d 170 (D.C.Cir.1990), *reversing in part*, 712 F.Supp. 986 (1989). The concurring judge joined that decision to permit testing holders of "secret" clearances (as well as those with "top secret" clearances and White House passes), significantly adding this caveat:

> [T]he difference between the government's interest in testing *secret*[1] clearance-holders and its interest in testing *top secret*[2] is not significant enough to tip the constitutional scales against testing. *I do not think it necessary, however, to go beyond this narrow holding.*[3]

*Hartness v. Bush*, 919 F.2d at 174 (Mikva, J., concurring).

Although I obviously agree with the dissenting judge who would have affirmed my decision, I am bound by the narrow holding agreed to by the two majority judges that limits the testing of EOP employees to those who have White House passes and thus have direct access to the President, as well as to those who hold top secret and secret clearances, but not "beyond." *Id.*

Ms. Doran does not fit into any of these categories approved for testing. She has no security clearance. The information accessible to her may be sensitive in a fiscal or political sense. But defendants have not asserted that she has access to any "truly sensitive" national security or foreign relations information such as that with respect to nuclear submarine construction considered in *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), cited with approval in *National Treasury Employees Union v. Von Raab* 489 U.S. 656, 667, 109 S.Ct. 1384, 1391, 103 L.Ed.2d 685 (1989). Accordingly, I conclude that the difference between the government's interest in testing a person who has no security clearance because her security-minded supervisors do not find her job requires one and its interest in testing top secret and secret clearance holders *is* "significant enough to tip the constitutional scales against testing." *Cf. Hartness v. Bush*, 919 F.2d at 174 (Mikva, J. concurring).

Nor does the risk posed to the President and the Vice President by Ms. Doran's work station in the New EOB justify submitting her to drug testing any more than it would justify requiring the testing of all who have access to the Capitol and other important public buildings. In any event, Ms. Doran's expressed willingness to surrender her pass to the *Old* EOB, which she has held for 12 years while untested for drug usage and apparently without posing any security threat, presents the defendants with an obvious remedy short of

---

**1.** Emphasis in original.

**2.** Emphasis in original.

**3.** Emphasis supplied.

testing her urine. Courts should not attempt to resolve delicate constitutional questions when a legal or practical resolution of a controversy is so readily at hand. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Accordingly, an accompanying Order will permanently enjoin the defendants from requiring Ms. Doran to submit to random urine tests.[4]

A further question remains with respect to Ms. Ferrantello. If she is otherwise properly included in the category of EOP employees earmarked for testing, her "secret" clearance would preclude the relief she seeks, irrespective of her access to the Old EOB. However, Ms. Ferrantello objects that the Revised Plan violates the APA by relying upon Federal Personnel Manual Letter ("FPM") 792–16, which was issued without pre-publication notice and an opportunity for public comment. Plaintiffs argue that the "revised" Plan is a functional reiteration of the original Plan, which relies impermissibly upon FPM Letter 792–16 and does not even cite the superceding FPM Letter 792–19, 54 Fed.Reg. 47324 (Nov. 13, 1989), that was properly published after notice and comment.

Defendants note, however, that after the appellate ruling on the preliminary injunction in this case, they revised the Plan to take into account intervening court decisions and other developments. Defendants further point to Circuit authority for the proposition that neither the Plan nor the FPM Letters are subject to the APA notice and comment requirements because they are "paradigmatic examples of matter(s) relating to agency management of personnel" and therefore "exempt from the *procedural* (notice-and-comment) requirements of the Administrative Procedures Act ..." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 19 (D.C.Cir.1989) (emphasis in original), *cert. denied sub. nom. Bell v. Thornburgh*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). If Fifth Circuit precedent is to the contrary, as asserted by

plaintiffs, that is not a conflict to be resolved at this level.

Because defendants did not illegally invoke FPM Letter 792–16, which was published without notice and comment, relief for Ms. Ferrantello as well as plaintiffs' prayer for a broader injunction against the entire Plan, must be denied.

An accompanying Order implements the decisions announced in this Memorandum.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 17th day of July, 1992, hereby

ORDERED: that plaintiffs' motion for a summary judgment that the Revised Executive Office of the President Drug–Free Workplace Plan violates the Administrative Procedures Act and for a permanent injunction against its enforcement generally is DENIED, and defendants' cross-motion for summary judgment on these issues is GRANTED; and it is further

ORDERED: that plaintiffs' motion for summary judgment and permanent injunction on behalf of Ms. Donna Ferrantello are DENIED, and defendants' motion for summary judgment on these issues is GRANTED; and it is further

ORDERED: that plaintiffs' motion for summary judgment and permanent injunction on behalf of Ms. Barbara Doran are GRANTED, without prejudice to timely reconsideration in the event that Ms. Doran should, upon request by, or on behalf of, defendants, fail to surrender her pass to the Old Executive Office Building, and defendants' motions on these issues are DENIED.

---

**4.** This order is without prejudice to timely reconsideration in the event that Ms. Doran should fail to surrender her Old EOB pass voluntarily upon request by, or on behalf of, defendants.